## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

GARY DANILOWICZ,                    :      CIVIL NO.: 1:20-CV-01605
                                    :
            Plaintiff,              :      (Magistrate Judge Schwab)
       v.                           :
                                    :
                                    :
KILOLO KIJAKAZI,[1]                 :
Acting Commissioner of              :
Social Security,                    :
                                    :
            Defendant.              :

## MEMORANDUM OPINION

### I. Introduction.

Gary Danilowicz ("Danilowicz") seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Supplemental Security Income ("SSI") under the Social Security Act.  We have jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).  Because the

---

[1] Kiolo Kijakazi is now the Commissioner of Social Security, and she is automatically substituted as the defendant in this action. *See* Fed. R. Civ. P. 25(d) (providing that when a public officer sued in his or her official capacity ceases to hold office while the action is pending, "[t]he officer's successor is automatically substituted as a party"); 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

Commissioner's decision is supported by substantial evidence, the court will affirm the Commissioner's decision.

## II.  Background and Procedural History.

We refer to the transcript provided by the Commissioner. *See docs. 16-1* to *16-11*.[2]  On February 28, 2018, Danilowicz filed an application for Social Security disability benefits, alleging disability beginning February 8, 2018. *Admin Tr.* at 10. His claim was denied on May 24, 2018. *Id.*  On July 23, 2018, Danilowicz filed a written request for a hearing, which was held on April 10, 2019 before Administrative Law Judge Frank Barletta ("ALJ"). *Id.*

On May 20, 2019, the ALJ determined that Danilowicz had not been disabled within the meaning of the Social Security Act since February 28, 2018, the date the application was filed. *Id.* at 21.  And so, he denied him benefits. *Id.* Danilowicz appealed the ALJ's decision to the Appeals Council, which denied his request for review on July 9, 2020. *Id.* at 1.  This makes the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court.

On September 4, 2020, Danilowicz began this action by filing a complaint claiming that the Commissioner's decision is not supported by substantial

---

[2] The facts of the case are well known to the parties and will not be repeated here. Instead, we will recite only those facts that bear on Danilowicz's claims.

evidence. *Doc. 1* at 2. Danilowicz requests that the court find that he is entitled to Social Security benefits or remand the case for a further hearing. *Id.* The Commissioner filed an answer to the complaint and a transcript of the proceedings that occurred before the Social Security Administration. *Docs. 15-16.* The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the undersigned. *Doc. 14.* The parties then filed briefs, *see docs. 17, 18*, and this matter is ripe for decision.

## III.  Legal Standards.

### A.  Substantial Evidence Review—the Role of This Court.

When reviewing the Commissioner's final decision denying a claimant's application for benefits, "the court has plenary review of all legal issues decided by the Commissioner." *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). But the court's review of the Commissioner's factual findings is limited to whether substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154. Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

Substantial evidence "is less than a preponderance of the evidence but more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's] finding from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F.Supp.2d 623, 627 (M.D. Pa. 2003).

The question before this court, therefore, is not whether Danilowicz is disabled, but whether substantial evidence supports the Commissioner's finding that he is not disabled and whether the Commissioner correctly applied the relevant law.

### B. Initial Burdens of Proof, Persuasion, and Articulation for the ALJ.

To receive benefits under Title XVI of the Social Security Act, a claimant generally must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected

to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a).  To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful work that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905(a).

The ALJ follows a five-step sequential-evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 416.920.  Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience, and residual functional capacity ("RFC"). 20 C.F.R. § 416.920(a)(4)(i)–(v).

The ALJ must also assess a claimant's RFC at step four. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 198 n.2 (3d Cir. 2019).  The RFC is "'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see also* 20 C.F.R. § 416.945(a)(1).  In making this assessment, the ALJ considers all the

claimant's medically determinable impairments, including any non-severe impairment identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 416.945(a)(2).

"The claimant bears the burden of proof at steps one through four" of the sequential-evaluation process. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010). But at step five, "the burden of production shifts to the Commissioner, who must . . . show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity." *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001).

The ALJ's disability determination must also meet certain basic substantive requisites. Most significantly, the ALJ must provide "a clear and satisfactory explication of the basis on which" his or her decision rests. *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). "The ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F. 3d 429, 433 (3d Cir. 1999). The "ALJ may not reject pertinent or probative evidence without explanation." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008). Otherwise, "'the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'" *Burnett*, 220 F.3d at 121 (quoting *Cotter*, 642 F.2d at 705).

**IV. The ALJ's Decision Denying Danilowicz's Claim.**

On May 20, 2019, the ALJ denied Danilowicz's claim for benefits. *Admin. Tr.* at 20.   At step one of the sequential-evaluation process, the ALJ found that Danilowicz had not engaged in substantial gainful activity since February 28, 2018, the application date. *Id.* at 12.   At step two of the sequential-evaluation process, the ALJ found that Danilowicz had the following severe impairments: degenerative disc disease, status-post anterior cervical discectomy and fusion, radiculopathy, thoracic outlet syndrome, brachial plexus injury, peripheral neuropathy, suprascapular neuralgia, chronic pain syndrome, asthma, depression, generalized anxiety disorder, social anxiety disorder, and post-traumatic stress disorder. *Id.* at 12.

At step three of the sequential-evaluation process, the ALJ found that Danilowicz did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 13.   Specifically, the ALJ discussed Listing 1.04 and that "[t]he record does not demonstrate compromise of a nerve root or the spinal cord with additional findings of evidence of nerve root compression accompanied by sensory or reflex loss and positive straight-leg raise testing; or spinal arachnoiditis; or lumbar spinal stenosis resulting in pseudoclaudication." *Id.*

The ALJ then determined that Danilowicz has the RFC to perform sedentary work[3] with some limitations. *Id.* at 15.  The ALJ found that Danilowicz must be given the option to alternate between sitting and standing after no more than 15 minutes. *Id.*  Additionally, Danilowicz was limited to occasional balancing, stopping, kneeling, crouching, and climbing ropes and stairs, and was not permitted to crawl, or climb ladders ropes or scaffolds. *Id.*  The ALJ further found that Danilowicz must avoid concentrated exposure to extreme cold and heat, wetness, humidity, noise above a moderated level, vibration, fumes, odors, dusts, gases, poor ventilation, and hazards. *Id.*  The ALJ limited Danilowicz to unskilled work, involving only simple tasks not performed in a fast-paced production environment. *Id.*  This included low-stress occupations, with only occasional, simple decision making, changes in work duties or work setting, and interaction with coworkers, supervisors, and the public. *Id.*  In making this RFC assessment, the ALJ considered Danilowicz's symptoms that could be accepted as consistent with the record evidence, the medical opinions, and the prior administrative medical findings. *Id.* at 15-19.

---

[3] *See* 20 C.F.R. § 416.967(a) ("Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.").

At step four of the sequential-evaluation process, the ALJ found that Danilowicz had no past relevant work. *Id.* at 19.   At step five of the sequential-evaluation process, considering Danilowicz's age, education, work experience, and RFC, as well as the testimony of a vocational expert, the ALJ found that there were jobs—ticket checker, document preparer, and inspector—that exist in significant numbers in the national economy that Danilowicz could perform. *Id.* at 20.   In sum, the ALJ concluded that Danilowicz was not disabled from February 28, 2018, through the date of his decision on May 20, 2019. *Id.*   Thus, the ALJ denied Danilowicz SSI benefits. *Id.*

**V. Discussion.**

Danilowicz raises two issues on appeal.   First, he asserts the ALJ impermissibly formulated his RFC without a medical opinion.   Second, he contends the jobs the ALJ determined Danilowicz could perform were not within the RFC applicable to Danilowicz.

**A. The ALJ's evaluation of Danilowicz's RFC is based on substantial evidence.**

First, Danilowicz argues the ALJ did not rely on any medical expert opinion in formulating his RFC. *Doc. 17* at 13.   More specifically, he asserts the ALJ erred by relying on his own lay interpretation of the medical records to reach conclusions

regarding his RFC. *Id.* Danilowicz argues that the ALJ erred in finding the only medical opinions of record to be unpersuasive and thereby formulated the RFC without the support of a medical opinion. *Id.*

The Commissioner contends that the ALJ's RFC determination comported with the new regulatory scheme controlling the handling of opinion evidence, which does not require him to adopt a medical opinion or prior administrative finding, and that even if he was so bound, the outcome would be the same because the ALJ found Danilowicz more physically limited than several medical opinions in the record indicated. *Doc. 18* at 18.

The Court finds that substantial evidence supports the ALJ's RFC determination. Because Danilowicz's claims concern the ALJ's handling of opinion evidence, we start with a brief overview of the regulations regarding opinion evidence. The regulations in this regard are different for claims filed before March 27, 2017, on the one hand, and for claims, like Danilowicz's, filed on or after March 27, 2017, on the other hand. Specifically, the regulations applicable to claims filed on or after March 27, 2017, ("the new regulations") changed the way the Commissioner considers medical opinion evidence and eliminated the provision in the regulations applicable to claims filed before March 27, 2017, ("the old regulations") that granted special deference to opinions of treating physicians.

The new regulations have been described as a "paradigm shift" in the way medical opinions are evaluated. *Densberger v. Saul*, No. 1:20-CV-772, 2021 WL 1172982, at \*7 (M.D. Pa. Mar. 29, 2021).   Under the old regulations, "ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy." *Id.*   But under the new regulations, "[t]he range of opinions that ALJs were enjoined to consider were broadened substantially and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis." *Id.*

Under the old regulations, the ALJ assigns the weight he or she gives to a medical opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c).   And if "a treating source's medical opinions on the issue(s) of the nature and severity of [a claimant's] impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record," the Commissioner "will give it controlling weight." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).   Under the old regulations, where the Commissioner does not give a treating source's medical opinion controlling weight, he or she analyzes the opinion in accordance with a number of factors:  the "[l]ength of the treatment relationship and the frequency of examination," the "[n]ature and extent of the treatment relationship," the

"[s]upportability" of the opinion, the "[c]onsistency" of the opinion with the record as whole, the "[s]pecialization" of the treating source, and any other relevant factors. *Id.* at §§ 404.1527(c)(2)–(c)(6), 416.927(c)(2)–(c)(6).

Under the new regulations, however, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Rather than assigning weight to medical opinions, the Commissioner will articulate "how persuasive" he or she finds the medical opinions. 20 C.F.R. §§ 404.1520c(b), 416.920c(b).  And the Commissioner's consideration of medical opinions is guided by the following factors:  supportability; consistency; relationship with the claimant (including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and the examining relationship); specialization of the medical source; and any other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1520c(c), 416.920c(c).  The most important of these factors are the "supportability" of the opinion and the "consistency" of the opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  As to supportability, the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical

opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).  And as to consistency, those regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

The ALJ must explain how he or she considered the "supportability" and "consistency" of a medical source's opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  Generally, the ALJ may, but is not required to, explain his or her consideration of the other factors. *Id*.  But if there are two equally persuasive medical opinions about the same issue that are not exactly the same, then the ALJ must explain how he or she considered the other factors. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

This Court and the Third Circuit have held that the ALJ does not need to base his or her RFC finding on a specific medical opinion; it is an administrative finding. *See Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations."); *Titterington v.*

13

*Barnhart*, 174 F. App' x 6, 11 (3d Cir. 2006) (there is no current "legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC [residual functional capacity]"); *Mays v. Barnhart*, 78 F. App'x 808, 813 (3d Cir. 2003); *Foux v. Saul*, 2021 U.S. Dist. LEXIS 60683 (M.D. Pa. Mar. 30, 2021) (Mariani, J.) ("Defendant is correct that the RFC assessment is the exclusive province of the ALJ and not the province of treating physicians or other medical providers.  Defendant is also correct that an ALJ is not required to seek a separate expert medical opinion to carry out his duty to assess a claimant's RFC.").

Here, the ALJ's RFC determination comported with the regulatory scheme and was supported by substantial evidence.  The ALJ first discussed the evidence relating to Danilowicz's physical functioning. *Id.* at 16.  In December 2017 (prior to the relevant period), the ALJ noted that Danilowicz underwent cervical fusion at the C5 through C6 levels. *Id.*  He stressed that Danilowicz subsequently reported pain symptoms to his treating physicians, but his physical examinations showed relatively benign results. *Id.*  The examinations showed tenderness, sensitivity, and some limited range of motion. *Id.*  Still, they also often revealed intact neurological tests, generally well-developed and equal muscle mass, full range of motion in the neck, normal ambulation, normal gait and station, grossly intact sensation, normal bilateral motor strength, and no clubbing, cyanosis, or edema in the extremities. *Id.*

14

at 17.  Accordingly, the ALJ found that "other medical evidence" in the record (Danilowicz's treatment for his pain) and "objective medical evidence" (the physical examinations) supported finding Danilowicz was capable of a range of sedentary work. *Id.*

As required by the regulations, the ALJ then discussed the persuasiveness of each medical opinion and prior administrative finding in the record as they related to Danilowicz's RFC.  The ALJ addressed the opinion of the State agency medical consultant, Catherine Smith, M.D. *Id.* at 17.  Dr. Smith found that Danilowicz could perform a range of light exertion work involving occasional balancing, stooping, kneeling, crouching, and climbing ramps and stairs, but never crawling or climbing ladders, ropes, or scaffolds. *Id.* at 18.  The ALJ cited that Dr. Smith further determined that Danilowicz should avoid concentrated exposure to temperature extremes, wetness, humidity, noise, vibration, pulmonary irritants, and hazards. *Id.*  The ALJ found that her opinion was not persuasive because it was not entirely consistent with the evidence of record. *Id.*  Danilowicz's physical examinations that revealed antalgic gait did not support Dr. Smith's opinion, and the ALJ found the examinations more consistent with an RFC finding of "sedentary work." *Id.*  Significantly, and the Commissioner notes, the ALJ found Dr. Smith's opinion to be not persuasive and instead assigned Danilowicz with greater limitations than those found by Dr. Smith. *Doc 18* at 20.

The ALJ also detailed the opinion of the consultative medical examiner, Marielle Stone, M.D.  Dr. Stone determined that Danilowicz could perform heavy exertion work but was limited to standing for three hours and walking for one hour at a time and walking for four hours in an eight-hour workday. *Id.*  She opined that Danilowicz could occasionally feel and frequently reach, handle, finger, push, and pull with the upper left extremity and could do the same continuously with the right upper extremity, *Id.*  Dr. Stone found that Danilowicz could frequently kneel and crouch, occasionally balance, stoop, crawl, and climb ladders or scaffolds. *Id.*  Dr. Stone also limited him to exposure to pulmonary irritants or extreme cold but stated he could have occasional exposure to humidity, wetness, and extreme heat, as well as frequent exposure to unprotected heights, moving mechanical parts, and vibration. *Id.*  The ALJ found Dr. Stone's opinion not persuasive because it was based on an isolated examination of Danilowicz. *Id.*  He determined it was inconsistent with Stone's examination findings that revealed slightly antalgic gait and decreased sensation. *Id.*  Again, the ALJ found this medical opinion not persuasive and thus supported greater limitations for Danilowicz's RFC.

The ALJ further discussed the opinion of the state agency psychological consultant, John Rohar, Ph.D., who found that Danilowicz had a mild limitation and understanding, remembering, or applying information, and moderate limitation in interacting with others, concentrating, persisting, or maintaining pace, and

16

adapting or managing oneself. *Id.* The ALJ thoroughly discussed the persuasiveness of this opinion addressing its consistency with the record. *Id.* He determined Dr. Rohar's opinion was persuasive because it was consistent with the medical evidence in the record that does not support greater functional limitations than those that Dr. Rohar recommended. *Id.* "[Dr. Rohar] describes cooperative behavior with good social skills and manner of relating, adequate expressive and receptive language skills, coherent and goal direct thought process, intact attention and concentration skills, average cognitive functioning, and only mildly impaired recent and remote memory skills." *Id.*

Regarding the opinion of the psychological consultative examiner, Charles LaJeunesse, Ph.D., the ALJ determined it to be somewhat persuasive. *Id.* Dr. LaJeunesse opined that Danilowicz had moderate limitations in understanding, remembering, and carrying out complex instructions and decision making. *Id.* He further found that Danilowicz had moderate limitations in responding appropriately to usual work situations and changes in routine work setting and interacting with the public and supervisors, but a marked limitation in interacting with coworkers. *Id.* The ALJ found the opinion somewhat persuasive, excluding the statement that Danilowicz has a marked limitation in interacting with coworkers. *Id.* He found this statement not persuasive because the evidence of record did not support it. *Id.* The ALJ based this determination on the fact that Danilowicz testified at the

hearing that he does not have difficulty getting along with others. *Id.* Furthermore, the ALJ explained, Danilowicz's mental status examinations during the relevant period, including Dr. LaJeunesse's examination, do not support a finding that Danilowicz has a marked limitation in interacting with others, as the examination describes cooperative behavior with good social skills and manner of relating. *Id.*

Thus, the Court finds that substantial evidence supported the ALJ's RFC determination. Even if the ALJ were bound to adopt a medical or administrative finding in adopting his RFC determination, the result of this case would not change, as the Commissioner points out, because the ALJ supported limitations greater than those recommended by the administrative agency findings. Furthermore, the regulations do not impose an obligation on the ALJ to base his RFC finding on a medical opinion or administrative medical finding. The ALJ discussed why each medical opinion was or was not persuasive and discussed their supportability and consistency.

In essence, Danilowicz argues the ALJ should have lent more credence to his preferred pieces of evidence. However, it is not the role of the Court to substitute its judgment for that of the ALJ. *See* Social Security Act, § 205(g), 42 U.S.C.A. § 405(g). The standard here is substantial evidence, which is deferential to the judgment of the ALJ. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). The ALJ's duty is to weigh the evidence and resolve conflicts. *See*

*Richardson v. Perales*, 402 U.S. 389, 410 (1971) (clarifying that when the record contains conflicting medical evidence, the ALJ must weigh that evidence and resolve the conflict); *Fargnoli v. Massanari*, 247 F.3d 34, 40 (3d Cir. 2001) (citations omitted) (explaining that an ALJ may weigh credibility of the evidence). Accordingly, substantial evidence supports the ALJ's RFC determination.

### B. The ALJ's evaluation of jobs Danilowicz could perform was supported by substantial evidence.

According to Danilowicz, the jobs identified by the vocational expert ("VE") are precluded by the limitations specified by the ALJ in his RFC assessment. *Doc. 17* at 9. Danilowicz notes that the ALJ limited him to unskilled work involving only simple tasks not performed in a fast-paced production environment. *Id.* He cites that the ALJ restricted him to low-stress work, with only occasional, simple decision-making and occasional changes in work duties or work setting. *Id.* The ALJ permitted Danilowicz to have only occasional interaction with coworkers, supervisors, and the public. *Id.* The VE's identifications of the positions of ticket checker, document preparer, and dowel inspector, therefore, are, according to Danilowicz, in conflict with the VE's testimony and the Dictionary of Occupational Titles ("DOT"). *Id.* This inconsistency, he contends, was not explained by the VE. *Id.* The Commissioner argues that the jobs identified by the

19

VE follow the ALJ's RFC assessment and cites the DOT to substantiate his claim. *Doc. 18* at 20.

The Court finds that substantial evidence supports the ALJ's vocational evaluation.  As an initial matter, the ALJ's reliance on the testimony of the VE in response to hypothetical questions about potential jobs for a claimant is permissible. *See Lane v. Comm'r of Soc. Sec.*, 100 F. App'x 90, 97 (3d Cir. 2004) (finding that VE testimony constitutes substantial evidence for purposes of judicial review where the testimony is in response to proper hypothetical questions which fairly set out all a claimant's impairments).  Thus, the ALJ properly relied on the VE's testimony to determine feasible jobs that Danilowicz could perform.

Furthermore, the ALJ satisfies his step five determination by identifying at least one job that a claimant can perform given his RFC. *See Inman v. Berryhill*, 2018 WL 7247123, at *7 (M.D. Pa. Dec. 28, 2018) ("Because the ALJ provides at least one job in the national economy existing in significant numbers that Inman can perform, we find that there is no cause for remand on this ground."); *see also* 20 C.F.R. §416.966(b) ("if work that you can do does exist in the national economy, we will determine that you are not disabled").  Moreover, if more than 200 jobs exist in the regional economy, this constitutes a significant number. *See Craigie v. Bowen*, 835 F.2d 56, 58 (3d Cir. 1987) (stating that 200 jobs within the regional economy constituted a significant number).

Here, the ALJ satisfied his step five determination by identifying at least one job that Danilowicz could perform: the dowel inspector. There are 18,000 such jobs available in the national economy, and 811 available in the regional economy. *Admin. Tr.* at 51-54. This constitutes a "significant amount" under *Craigie v. Bowen*.

The job of dowel inspector is compatible with an RFC of "sedentary work," which requires "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." *See* 20 C.F.R. 416.96. The DOT defines the job of dowel inspector as involving the "[inspection of] dowel pins for flaws, such as square ends, knots, or splits, and discard[ing] defective dowels." *See* Dowel inspector, DOT # 669.687-014, 1991 WL 686074. The DOT definition specifically classifies the job as sedentary work:

> STRENGTH: Sedentary Work - Exerting up to 10 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or a negligible amount of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) to lift, carry, push, pull, or otherwise move objects, including the human body.

> DOT # 669.687-014, 1991 WL 686074.

Pursuant to the regulations, "sedentary work" involves sitting, although a certain amount of walking and standing is often necessary in carrying out job duties. 20 C.F.R. 416.96. Jobs are sedentary if walking and standing are required only occasionally, and other sedentary criteria are met. *Id.*

21

Danilowicz's argument that the VE's testimony conflicted with the DOT's description of dowel inspector is therefore meritless, as the job requires only simple, repetitive movement and is classified as sedentary work. He points us to no other evidence or contrary authority stating otherwise.

Danilowicz also asserts that, because the job of dowel inspector is performed in a woodworking facility, that it would "require working in the vicinity of dust and fumes" *Doc. 17* at 17. However, the DOT definition for dowel inspector states that the only environmental hazard inherent in the job is "moderate noise." DOT # 669.687-014, 1991 WL 686074. Therefore, the VE testimony does not conflict with the DOT, and the ALJ's reliance on such testimony is supported by substantial evidence.

The ALJ satisfied his step five determination by identifying at least one job that Danilowicz can perform existing in significant numbers in the national economy. As such, whether the other two jobs identified by the VE comport precisely with Danilowicz's RFC is immaterial. *See* 20 C.F.R. § 404.1566(b) ("Work exists in the national economy when there is a significant number of jobs [in one or more occupations] having requirements which you are able to meet with your physical or mental abilities and vocational qualifications."); *Henderson v. Social Security Admin.*, 87 Fed. Appx. 248, 253 (3d Cir. 2004) ("The regulations specifically require a finding of a significant number of jobs, and do not require the

existence of multiple occupations."). The ALJ, therefore, satisfied his burden under the substantial evidence standard. Accordingly, the Court finds that the ALJ's determination about hypothetical jobs Danilowicz could perform was based on substantial evidence.

## VI. Conclusion.

For the foregoing reasons, the decision of the Commissioner will be affirmed, and final judgment will be entered in favor of the Commissioner and against Danilowicz. An appropriate order follows.

_**S/Susan E. Schwab**_
Susan E. Schwab
United States Magistrate Judge